IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOE CASTILLO,

    Plaintiff,

v.                                                                                                No. 1:21-cv-00258-DHU-KK

RUDY HILLE,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Rudy Hille's Motion for Judgment as a Matter of Law II: Seeking a Judgment of Dismissal Based on Qualified Immunity. Doc. 102. Having considered the motion and related briefing, the Court concludes that Defendant's Fed. R. Civ. P. 50(b) motion will be **DENIED**.

## I. BACKGROUND

Familiarity with the disputed facts of this case is presumed. In summary, Plaintiff Joe Castillo brought a claim alleging that Defendant Rudy Hille violated his Fourth Amendment right to be free from unreasonable search and seizure by using excessive force when Defendant continuously tased Plaintiff after he was subdued. Doc. 1-2. Upon completion of discovery, Defendant moved for summary judgment, asserting the defense of qualified immunity. Doc. 49. The Court denied Defendant's Motion for Summary Judgement for Dismissal of Excessive Force Claim. Docs. 79, 94. Plaintiff's excessive-force claim was tried to a jury beginning on April 10, 2023.

On April 11, 2023, at the close of Plaintiff's case, Defendant presented three oral motions under Fed. R. Civ. P. 50(a). *See* Tr. Vol. 2, 330:11-25–350:1-8, Doc. 96. Defendant challenged the

sufficiency of the evidence based on 1) a qualified immunity defense, 2) sufficiency of the evidence regarding excessive force, and 3) punitive damages. *See id.* On April 13, 2023, after Defendant rested, Defendant again made three oral Rule 50(a) motions. *See* Tr. Vol. 4, 686:9-25–703, Doc. 98. Defendant's motions challenged the sufficiency of the evidence based on 1) a qualified immunity defense, 2) punitive damages and future damages, and 3) a new Rule 50(a) motion on grounds of causation. *See id.* Defendant's motions were all denied, and the case was sent to the jury. Following the five-day trial, the jury returned a verdict in favor of Plaintiff and against Defendant and awarded Plaintiff $180,000 in damages. Doc. 100.

In the current motion now before the Court—one of several post-verdict motions filed by Defendant—Defendant argues the jury's verdict should be overturned because Defendant is entitled to qualified immunity on Plaintiff's excessive force claim. Defendant's argument is essentially that the trial evidence failed to establish that Defendant's use of force against Plaintiff was objectively unreasonable under *Graham v. Connor*, 490 U.S. 386, 396 (1989) (setting forth objective reasonableness inquiry). Defendant further argues that Plaintiff failed to show a violation of a clearly established right because as of "March 4, 2018, no Tenth Circuit opinion or US Supreme Court opinion had held that it was unconstitutional for an officer to repeatedly use a taser under the specific facts of this case[.]" Doc. 102 at 18–9.

Plaintiff opposes the motion on two grounds. First, he argues that a "Rule 50 Motion is unavailable on the issue of Qualified Immunity because the issue of Qualified Immunity was not put to the jury[.]" Doc. 111 at 1. Second, Plaintiff argues that "[e]ven if the issue of Qualified Immunity had been put to the jury … the evidence at trial was sufficient to support [the] jury['s] verdict." *Id*. The Court will present additional facts and arguments as needed in the sections that follow.

## II. LEGAL STANDARD

A court should enter judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable person to find for that party on that issue." Fed. R. Civ. P. 50(a). In reviewing a Rule 50 motion, the court must view the evidence and the inferences in the light most favorable to the nonmoving party. *Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 812 (10th Cir. 2000). The court cannot weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury, *Greene v. Safeway Stores*, 98 F.3d 554, 557 (10th Cir. 1996), because "it is the sole province of the jury to appraise credibility, draw inferences, determine the weight to be given testimony and to resolve conflicts in the facts." *Stroup v. United Airlines, Inc.*, 26 F.4th 1147, 1156 (10th Cir. 2022) (citation and quotations omitted); *Webco Indus., Inc. v. Thermatool Corp.*, 278 F.3d 1120, 1128 (10th Cir. 2002) ("We do not retry issues, second guess the jury's decision-making, or assess the credibility of witnesses and determine the weight to be given their testimony").

Judgment as a matter of law is appropriate "only if the proof is all one way or so overwhelmingly preponderant in favor of the movant as to permit no other rational conclusion." *Wilson v. Schlumberger Tech. Corp.*, 80 F.4th 1170, 1180 (10th Cir. 2023) (citation omitted). The controlling question is whether the plaintiff has arguably proven a legally sufficient claim. *Bay v. Anadarko E&P Onshore LLC*, 73 F.4th 1207, 1215 (10th Cir. 2023). "The quantum of evidence necessary to defeat a JMOL motion is slight, such that justifying the grant of a JMOL motion is difficult in practice." *Stroup*, 26 F.4th at 1156–57. In reviewing a Rule 50 motion, the court determines only whether the jury verdict is supported by substantial evidence. *Webco Indus.*, 278 F.3d at 1128. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion, even if different conclusions also might be supported by the evidence." *Id.*

Because granting a motion for judgment as a matter of law deprives a party of a determination of the facts by a jury, *Greene*, 98 F.3d at 560, a Rule 50 motion "should be cautiously and sparingly granted." *E.E.O.C. v. Prudential Fed. Sav. & Loan Assoc.*, 763 F.2d 1166, 1171 (10th Cir. 1985). Granting a Rule 50 motion is proper "only when the court is certain the evidence *conclusively* favors one party such that reasonable [people] could not arrive at a contrary verdict." *Stroup*, 26 F.4th at 1157 (quoting *Mountain Dudes v. Split Rock Holdings, Inc.*, 946 F.3d 1122, 1130 (10th Cir. 2019)); *Greene*, 98 F.3d at 557 ("Unless the proof is all one way or so overwhelmingly preponderant in favor of the movant as to permit no other rational conclusion … judgment as a matter of law is improper").

### III. DISCUSSION

**Excessive Force Claim**

The Fourth Amendment guarantees citizens the right "to be secure in their persons … against unreasonable … seizures." U.S. Const. amend. IV. An individual defendant sued under 42 U.S.C. § 1983 "may raise a defense of qualified immunity, which shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017). "Once an individual defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016) (quotation marks omitted).

**1) Constitutional Violation**

In the context of a qualified immunity defense to an excessive force claim, the plaintiff must show that (1) a "seizure" occurred and (2) the seizure was "unreasonable." *Bella v. Chamberlain*, 24 F.3d 1251, 1255 (10th Cir. 1994) (quoting *Brower v. County of Inyo*, 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989)).[1] "In *Graham* the Supreme Court noted three nonexclusive factors for determining whether a particular use of force was excessive: (1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Est. of Valverde v. Dodge*, 967 F.3d 1049, 1060 (10th Cir. 2020) (quoting *Graham*, 490 U.S. at 396).

As explained below, the Court finds each of these factors weighs in favor of upholding the jury's verdict.

### a. Severity of the Crime

Defendant argues that he had probable cause that Plaintiff committed two felonies during the encounter. First, Defendant argues that Plaintiff bit him during the struggle, which constituted Aggravated Battery Upon a Police Officer. Second, Defendant argues that Plaintiff struck Officer Hawkins in the face, which constituted Battery Upon a Peace Officer. The Court will separately examine the evidence and arguments concerning each of these incidents.

Beginning with the biting incident, there was conflicting evidence before the jury whether Plaintiff did in fact bite Defendant. In his Rule 50 motion, Defendant relies on three pieces of trial evidence to establish that Plaintiff bit him: (1) his testimony that Plaintiff bit him. *See* Tr. Vol. 2,

---

[1] The use of a taser on a person is a "seizure." *See Cavanaugh v. Woods Cross City*, 625 F.3d 661, 665 (10th Cir. 2010). The parties do not dispute that Plaintiff was seized.

251:6-7, Doc. 96 ("Q. Okay. And at this point Mr. Castillo bites you, correct? A. Yes"); (2) the testimony of Celeste Gonzales, an Allsup's gas station worker testified that she witnessed Plaintiff bite Defendant, *see* Tr. Vol. 3, 571:21-24, Doc. 97 ("A. I observed Joe Castillo trying to get away and try and bite the officer. Q. You observed Joe Castillo bite Rudy Hille? A. Yes, ma'am"); and (3) the testimony of Emergency Medical Technician ("EMT") John Moody, who testified that he treated Defendant for a bite after the encounter, *see id.* at 558:18-19 ("Q. What did you treat him for? A. He had a bite as well as a little laceration on the hand").

However, Plaintiff testified that he did not bite Defendant. *See* Tr. Vol. 1, 38:9-10, Doc. 95 ("Q. Did you bite him? A. No"). Importantly, the Court must draw inferences in Plaintiff's favor, "even if different conclusions also might be supported by the evidence." *Webco Indus.*, 278 F.3d at 1128. The Court therefore assumes that Plaintiff did not bite Defendant. And other evidence gave the jury a basis to discredit Defendant's version of events. For example, Defendant made inconsistent statements about the location of the alleged bite. In a post-incident statement made in the aftermath of the encounter, Defendant reported that Plaintiff bit him on his left arm. *See* Pl.'s Trial Ex. 1, 16:32-36 (video evidence of Defendant pointing to his left arm and stating, "I think he bit me right here"). But at trial Defendant testified that Plaintiff bit him on his right arm. *See* Tr. Vol. 3, 422:3-6, Doc. 97 ("Q. Okay. And what's the picture on the right? A. It's an injury of a bite mark on my right arm. Q. Is that your right arm? A. My forearm").

Drawing all inferences in Plaintiff's favor, as the Court must, Plaintiff's evidence therefore shows that he did not bite Defendant. Also drawing inferences in Plaintiff's favor, the evidence shows that Defendant made inconsistent statements about the location of the bite, which gave the jury a reasonable basis to infer that Defendant used the alleged biting incident as a pretext to "justify the increased use of force on [Plaintiff]," as Plaintiff argues. Doc. 111 at 4. In summary,

the trial evidence does not "conclusively" favor Defendant. *Stroup*, 26 F.4th at 1157 (explaining that a Rule 50 motion is proper "only when the court is certain the evidence *conclusively* favors one party such that reasonable [people] could not arrive at a contrary verdict"). Thus, there was substantial evidence for the jury to conclude that probable cause was lacking for the crime of Aggravated Battery Upon a Police Officer.

Similarly, there was conflicting evidence as to whether Plaintiff committed Battery Upon a Police Officer by allegedly striking Officer Hawkins in the face. In his Rule 50 motion, Defendant relies on his own testimony that he personally observed Plaintiff hit Officer Hawkins, *see* Tr. Vol. 2 at 254:1-2 ("Q. Now, you actually observed Mr. Castillo hit Officer Hawkins in the face; isn't that right.? A. Yes"), and Officer Hawkins' testimony that Plaintiff struck him. *See* Tr. Vol. 3 at 504:9-11; 16-17 ("Q. What did Joe Castillo do? A. When I was pushing his jaw, his face away from me, his hand went up and hit me in the face... Q. Okay. At that moment, did you perceive a threat? A. Yes"). In addition to this testimonial evidence, Defendant points to video evidence allegedly showing Plaintiff's "right hand … hit[ting] Officer Hawkins in the face" roughly thirty seconds into the struggle between the two men. Doc. 102 at 10 (citing Pl.'s Trial Ex. 1 at 0:12:33–0:12:36).

However, as Plaintiff correctly points out, Battery Upon a Police Officer requires intent. *See* N.M. Stat. Ann. § 30–22–24 ("Battery upon a peace officer is the unlawful, *intentional* touching or application of force to the person of a peace officer while he is in the lawful discharge of his duties, when done in a rude, insolent or angry manner") (emphasis added). Plaintiff testified, and the Court credits as true, that he struck Officer Hawkins accidentally, not intentionally. *See* Tr. Vol. 2 at 180:19-21 ("It was more like a struggle, like I'm trying to move my hand. It wasn't an intentional hit. … I don't think nobody can intentional hit anybody like that"); *id*. at 181:8-11

("[I]t was an accident. It was a struggle. You're going through it. I was freaking out. His hand goes up. It wasn't like I intentionally balled up my fist and hit Officer Hawkins"). The jury heard the officers' testimony, Plaintiff's testimony, and viewed video evidence of the encounter. In weighing this evidence, the jury was "entitled to credit [Plaintiff]'s testimony that [the strike] was not intentional but a mere reflex based on what [Officer] Hawkins was doing to [Plaintiff's] arm at the time," as Plaintiff argues. Doc. 111 at 5. *See Webco Indus.*, 278 F.3d at 1128 (a court assessing a Rule 50 motion "do[es] not retry issues, second guess the jury's decision-making, or assess the credibility of witnesses and determine the weight to be given their testimony"). Because there was substantial evidence for the jury to conclude that probable cause was lacking for the crime of Battery Upon a Police Officer, the Court will not overturn the jury's verdict on the issue.

In summary, the first *Graham* factor weighs in favor of upholding the jury's verdict.

### b. Whether Plaintiff posed an immediate threat to the safety of the officers

The second *Graham* factor is "whether the suspect poses an immediate threat to the safety of the officers or others." *Graham*, 490 U.S. at 396. Defendant, relying on video evidence and Plaintiff's testimony, argues that Plaintiff—not the officers—initiated the encounter by pushing Defendant's hand away when Defendant attempted to restrain him. *See* Doc. 102 at 20 (citing Pl.'s Trial Ex. 1 at 0:12:02–0:12:03 (Officer Hille's lapel camera); Pl.'s Trial Ex. 2, 0:7:25–0:7:26 (Officer Hawkins' lapel camera); Tr. Vol. 2 at 141:25; 142:1-3 (Plaintiff's testimony)). Defendant testified that before Plaintiff allegedly bit him, Defendant had used only "hands-on" force, showing that Defendant started with minimal force, according to Defendant. Tr. Vol. 3 at 392:3-5.

In addition to this evidence, Defendant again points to the previously mentioned evidence that Plaintiff allegedly bit Defendant (which Defendant argues is corroborated by Celeste Gonzales' and EMT John Moody's testimony), and that Plaintiff threw a punch at Officer

8

Hawkins. Defendant also points to the officers' testimony about Plaintiff's "unusual strength." *Id* (citing Tr. Vol. 2 at 247:9-13 (Defendant's testimony that "after we fell down outside of the Allsup's, I knew that Officer Hawkins and I wouldn't be able to physically restrain Joe because he was very strong"); Tr. Vol. 3 at 499:23-25 (Officer Hawkin's testimony that "that was one of most difficult times I've ever had in my 16 years of getting someone cuffed up. That's one of the most difficult times I've ever had")). Defendant also cites his testimony that even after the final tase, it took both about nineteen seconds to place Plaintiff in handcuffs. *See id*. (citing Tr. Vol. 3 at 479:1-4). Finally, Defendant cites Ms. Gonzales' testimony that she "want[ed] to press [a] panic button" under the counter "because [she] felt like the officers needed help." Tr. Vol. 3 at 576:7; 10. Defendant argues that this evidence shows that "*Graham* factor number two weighs in [his] favor." Doc. 102 at 21.

The Court concludes that Plaintiff has put forward the requisite "slight evidence" on the second *Graham* factor to defeat Defendant's Rule 50 motion. *See United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*, 79 F.4th 1262, 1271 (10th Cir. 2023) ("Only slight evidence in favor of the non-movant is required to defeat a [Rule 50] motion"). First, as Plaintiff correctly notes, after Defendant first tased Plaintiff, Defendant's subsequent commands shifted from statements like "stop fighting"—indicating that Plaintiff posed a threat—to "put your hands behind your back"—indicating that the threat was neutralized or had at least lessened. Doc. 111 at 5 (citing Pl.'s Trial Ex. 1 at 0:12:50—0:30:48). The jury could infer that Defendant's change in instructions indicates that Defendant knew Plaintiff had stopped resisting and yet Defendant continued to tase Plaintiff. Second, the Court credits Plaintiff's version of events that he was attempting to comply with Defendant's command to put his hands behind his back, but this was impossible because Plaintiff was pinned beneath Officer Hawkins. Finally, the jury could reasonably find that

9

Plaintiff's many pleading statements—"Help!" Okay, Okay Okay" "Ayyyy!" "They're killing me!"—indicated that Plaintiff did not pose an immediate threat. *See Wilkins v. City of Tulsa, Oklahoma*, 33 F.4th 1265, 1274 (10th Cir. 2022) (suspect's statements like "please, man," "you're breaking my f---ing wrists," and "I'm not doing nothing to you" indicated that he did not pose a threat to officers).

In summary, the second *Graham* factor weighs in favor of upholding the jury's verdict.

c. <u>Whether Plaintiff Actively Resisted Arrest or Attempted to Flee</u>

The third *Graham* factor is "whether [the person] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Courts "consider any resistance during the suspect's encounter with officers." *Wilkins*, 33 F.4th at 1273. That said, "a suspect's initial resistance does not justify the continuation of force once the resistance ceases." *Id*.

To support this factor, Defendant relies on much of the same evidence that has already been previously mentioned. For example, Defendant reiterates that Plaintiff allegedly bit Defendant, threw a punch at Officer Hawkins, and tried to bite Officer Hawkins as well. Defendant also argues that throughout the struggle Plaintiff allegedly "refuse[d] to allow officers to place him in handcuffs." Doc. 102 at 21. And, according to Defendant, "following the final taser deployment, Plaintiff still refused to allow officers to place him in handcuffs." *Id*. In his reply brief, Defendant also argues that it is apparent Plaintiff was resisting Officer Hawkins' attempts to subdue Plaintiff because Plaintiff was spinning his body underneath Officer Hawkins. *See* Doc. 118, 5.

With this view of the facts as such, Defendant argues that this case resembles *Hinton v. City of Elwood, Kan.*, 997 F.2d 774 (10th Cir. 1993). In *Hinton*, the plaintiff, Hinton, shoved an officer, prompting two police officers "pushed Hinton to the ground where they attempted to handcuff him." *Id*. at 777. Undeterred, the plaintiff "continued to struggle with [the two officers]

by kicking his feet, flailing his arms, and biting the officers." *Id.* One officer "eventually used an electrical stun gun to subdue Hinton." *Id*. Although the Tenth Circuit held that the first and second *Graham* factors favored the plaintiff, the court treated the third factor as dispositive, and held the officers' use of force was objectively reasonable under the circumstances. *Id*. at 781–82.

But there are key differences between *Hinton* and this case. Importantly, in *Hinton*, the plaintiff "admit[ed] … that he was actively and openly resisting [the officers'] attempts to handcuff him, even to the extent of biting the officers." *Id*. at 781. In addition, the plaintiff's own police conduct expert testified that the officers acted appropriately. *See id*. Here, in contrast, Plaintiff has made no similar admission.[2] As previously explained, the Court credits Plaintiff's version of events that he did *not* bite Defendant or intentionally strike Officer Hawkins. And unlike the plaintiff in *Hinton*, Plaintiff maintains that he tried to comply with police commands to put his hands behind his back, but was unable to do so because Officer Hawkins was pinned on top of him. Finally, there was no expert testimony for the jury to consider, as was the case in *Hinton*. Therefore, *Hinton* is factually and procedurally distinguishable. The Court concludes that the third *Graham* factor weighs in favor of upholding the jury's verdict.

In summary, all the other evidence before the jury, construed in the light most favorable to Plaintiff, shows that that there was substantial evidence to support the jury's verdict that Defendant's use of force was excessive under *Graham*. Because there was a "legally sufficient

---

[2] Defendant argues that Plaintiff did in fact "admit[]" during trial "that he did not stop resisting …." Doc. 102 at 15. But in the cited portions of Plaintiff's testimony, Plaintiff elaborated that "even if I stopped, they were still going, even if I would have stopped," and he explained that he "didn't even know what … was … happening to [him]." Tr. Vol. 2 at 9-10; 12-13. Although Defendant describes this testimony as an "admi[ssion] that [Plaintiff] was resisting," Doc. 102 at 22, a reasonable jury could draw a different factual conclusion from this testimony.

11

evidentiary basis for a reasonable person to find for [Plaintiff] on that issue," Fed. R. Civ. P. 50(a), Defendant's Rule 50 motion is denied.

### 2) Clearly Established Law

Having determined Plaintiff's trial evidence could have established a violation of a constitutional right, the next question is whether that right was clearly established at the time the conduct occurred. *See Gutierrez*, 841 F.3d at 900. "To be clearly established, ordinarily there must be prior Supreme Court or Tenth Circuit precedent, or the weight of authority from other circuits, that would have put an objective officer in [defendant]'s position on notice that he was violating [plaintiff]'s Fourth Amendment rights." *Emmett v. Armstrong*, 973 F.3d 1127, 1137 (10th Cir. 2020) (alterations in original) (quotation marks omitted).

The parties focus on a single case, *Perea v. Baca*, 817 F.3d 1198 (10th Cir. 2016). As explained more below, *Perea* is an analogous case that makes clear that as of 2018 "continued use of force after an individual has been subdued is a violation of the Fourth Amendment." *Id.* at 1205.

In *Perea*, two Albuquerque Police Department officers performed a welfare check in response to calls that the suspect was on "very bad drugs" and pacing in his yard. *Id.* at 1201. The officers were told they were responding to a verbal fight and that no weapons were involved. *Id*. Officers saw the suspect on a bicycle. *Id*. Once he recognized the police, the suspect pedaled faster and ran through a stop sign, a minor crime. *Id*. at 1201, 1203. A foot chase ensued and one of the officers pushed the suspect off his bicycle, without telling him why police were following him or telling him to halt or stop. *Id*. at 1201.

The officers tried to detain the suspect, but he "struggled and thrashed while holding a crucifix." *Id.* One of the officers tasered the suspect ten times in two minutes. "At some point before the taserings stopped, [the officers] were able to get [the suspect] on the ground on his

12

stomach, with both officers on top of him, effectively subduing him." *Id*. Applying the *Graham* factors, the Tenth Circuit explained that the first factor (severity of the crime) justified only "minimal force" because the suspect's crime was minor. *Id*. at 1202–03. The second factor (the threat to officers) weighed in the suspect's favor because the officer never claimed to be threated. *Id*. at 1203. The third factor (resisting arrest) justified "some" force "during the period in which [the suspect] was resisting." *Id*. However, the suspect's "resistance (thrashing and swinging a crucifix) did not justify the officers' severe response" because "[e]ven if [the suspect] initially posed a threat to the officers that justified tasering him, the justification disappeared when [he] was under the officers' control." *Id.* at 1203–04. The court ruled that it was "clearly established that officers may not continue to use force against a suspect who is effectively subdued." *Id*. at 1204.

Defendant argues that the facts of *Perea* are "vastly different" from the current case. Doc. 102 at 26. According to Defendant, unlike the suspect in *Perea* who committed minor crimes and posed no threat to officers, Plaintiff allegedly was the initial aggressor and officers believed he had a warrant. In addition, Defendant argues that he refrained from using his taser "until … he had probable cause that two felonies had been committed by Plaintiff," compared to the officers in *Perea* who started the encounter by pushing the plaintiff off his bicycle without an explanation. Doc. 102 at 24.

Defendant also argues that Plaintiff was not subdued like the plaintiff in *Perea.* According to Defendant, the unconstitutional tasings in *Perea* occurred after "the officers pushed [the suspect] to the ground with his arms under body" with "[o]ne officer … on the upper part of [the suspect's] body while the second officer was on his legs." *Id*. at 26 (citation and quotation marks omitted). According to Defendant, unlike the suspect in *Perea*, Plaintiff "was on his back—not prone with

13

his hands pinned underneath him," suggesting that Plaintiff could still put up a fight. *Id*. at 27. Defendant argues that Plaintiff was subdued only when "he was placed in handcuffs"; until that point "Plaintiff continued to actively resist and fight with officers." *Id*.

However, Defendant's arguments once again presume his version of the facts, not Plaintiff's, which the Court must accept in reviewing a Rule 50 motion. *See Tyler*, 232 F.3d at 812. Under the correct view of the facts, Plaintiff did not bite Defendant or intentionally throw a punch at Officer Hawkins. Furthermore, there was a factual dispute about whether Plaintiff's physical response during the encounter constituted resisting arrest or reflexive reactions. Crediting Plaintiff's evidence, Plaintiff was attempting comply with Defendant's command to put his hands behind his back but was unable to do so because Officer Hawkins was controlling his hands. Plaintiff also made several pleading statements to officers, which the jury could find indicated that Plaintiff did not pose a threat officers. All the other evidence before the jury, construed in Plaintiff's favor, shows the jury reasonably found for Plaintiff. Under Plaintiff's version of events, clearly established law put Defendant on notice that "continued use of force after an individual has been subdued is a violation of the Fourth Amendment." *Perea.* at 1205.

In summary, the Court rejects Defendant's qualified immunity defense on excessive force and concludes that his motion will be denied.

### IV. CONCLUSION

For the reasons stated herein, it is therefore **ORDERED** that Defendant Rudy Hille's Motion for Judgment as a Matter of Law II: Seeking a Judgment of Dismissal Based on Qualified Immunity **(Doc. 102)** is **DENIED**.

**IT IS SO ORDERED**.

_____
HON. DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE