**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JOE CASTILLO,
Plaintiff,

v. No. 1:21-cv-00258-DHU-KK

RUDY HILLE,
Defendant.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff Joe Castillo's Motion for Attorneys' Fees and Litigation Expenses. Doc. 105. Having considered the motion and related briefing, the Court concludes that Plaintiff's motion will be **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

Plaintiff Joe Castillo ("Plaintiff") filed this federal action alleging that Defendant Rudy Hille ("Defendant"), a former police officer with the City of Hobbs, New Mexico, violated his Fourth Amendment right to be free from unreasonable search and seizure by using excessive force against Plaintiff during an incident in which Defendant tased Plaintiff several times. Doc. 1-2. Plaintiff's case was tried to a jury beginning on April 10, 2023. Following five days of trial, the jury returned a verdict in favor of Plaintiff and against Defendant and awarded Plaintiff $180,000 in damages. Doc. 100. On July 6, 2023, the Court entered Judgment for the Plaintiff. *Id.*

Plaintiff now moves the Court for an award of reasonable attorney's fees and litigation expenses and costs pursuant to 42 U.S.C. 1988(b), 28 U.S.C §1920, and the local rules for the District of New Mexico. Defendant Hille opposes the motion, disputing the reasonableness of Plaintiff's requested attorney's fees, taking issue with the form of Plaintiff's declaration and time

records in support of his request for fees, and objecting to certain expenses and costs for which Plaintiff seeks reimbursement.

## II. LEGAL STANDARD

The Civil Rights Attorney's Fees Awards Act of 1976 authorizes federal district courts to award a reasonable attorney's fee to prevailing parties in civil rights litigation. *See* 42 U.S.C. § 1988(b). The purpose of § 1988 is to ensure "effective access to the judicial process" for persons with civil rights grievances. *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S. Ct. 1933, 1937, 76 L. Ed. 2d 40 (1983) (citing H.R.Rep. No. 94–1558, p. 1 (1976)). "Accordingly, a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Id*. (citation omitted).

"In any fee request under § 1988(b), a claimant must prove two elements: (1) that the claimant was the prevailing party in the proceeding; and (2) that the claimant's fee request is reasonable." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (internal quotation marks and citation omitted). To determine the reasonableness of a fee request, a court must first calculate the "lodestar" amount, which is the reasonable number of hours spent on the litigation multiplied by a reasonable hourly rate. *See United Phosphorus, Ltd. v. Midland Fumigant, Inc*., 205 F.3d 1219 (10th Cir. 2000); *see also Hensley*, 461 U.S. at 429. A court should evaluate the reasonableness of worked hours "much as a senior partner in a private law firm would review the billing of subordinate attorneys." *Robinson*, 160 F.3d at 1281.

"To determine what constitutes a reasonable [hourly] rate, the district court considers the prevailing market rate in the relevant community." *Lippoldt v. Cole*, 468 F.3d 1204, 1224-25 (10th Cir. 2006). The party entitled to fees must provide the district court with sufficient information to evaluate the prevailing market rates. *See id*. at 1225. Moreover, the party must also demonstrate

that the rates are similar to rates for similar services by "lawyers of reasonably comparable skill, experience, and reputation" in the relevant community and for similar work. *Id*. (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). "If the district court does not have adequate evidence of prevailing market rates for attorney fees, then it may, 'in its discretion, use other relevant factors, including its own knowledge, to establish the rate.'" *Id*. (quoting *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1257 (10th Cir.1998)); *see also Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1493 (10th Cir.1994) (explaining that a district court may consider its "own knowledge of prevailing market rates as well as other indicia of a reasonable market rate.") (internal quotation marks omitted).

In addition to fees for representation, § 1988 authorizes those fees that are "incidental and necessary expenses incurred in furnishing elective and competent representation." *Brown v. Gray*, 227 F.3d 1278, 1297 (10th Cir. 2000). "Items that are normally itemized and billed in addition to the hourly rate should be included in fee allowances in civil rights cases if reasonable in amount." *Ramos v. Lamm*, 713 F.2d 546, 599 (10th Cir. 1983) (overruled on other grounds by *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 725 (1987)). "In other words, reasonable out-of-pocket expenses not normally absorbed as part of law firm overhead should be reimbursed as attorneys' fees under section 1988." *Brown*, 227 F.3d at 1297.

"For items not reimbursable as attorney's fees under § 1988, the general costs statute, 28 U.S.C. 1920, is controlling." *Ramos*, 713 F.2d at 560. Section 1920 provides that a judge or clerk of any court of the United States may tax certain fees as costs. 28 U.S.C. § 1920. The statute works together with Rule 54(d), which provides that costs other than attorneys' fees "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d). Recoverable costs include clerk and

marshal fees, court reporters' fees, printing and witness fees, copying fees, and certain docket fees. 28 U.S.C. § 1920.

## III. DISCUSSION

In this case, Plaintiff requests an award of attorneys' fees in the amount of $87,647.50 and an award of $3,489.41 in litigation expenses and costs. Doc. 105 at 1. The parties agree that Plaintiff is the prevailing party in this case given that a jury found in his favor and awarded him damages on his civil rights claims brought pursuant to 42 U.S.C. § 1983. Doc. 105. Thus, the only question before the Court is whether Mr. Castillo's fee request is "reasonable" and whether he is entitled to the amount of litigation costs he is requesting. For the following reasons, the Court will grant Plaintiff's request for attorneys' fees, will reserve ruling on the reasonableness of the requested hourly rates for Plaintiff's attorneys, and will partially grant his request for the amount of litigation expenses and costs he seeks.

### A. Plaintiff's Request for Attorneys' Fees.

As noted above, although a prevailing party in a civil rights action may recover "a reasonable attorney's fee as part of the costs," 42 U.S.C. § 1988(b), the statute does not explain what Congress meant by a "reasonable" fee. The Tenth Circuit Court of Appeals has instructed that "[t]o determine the reasonableness of a fee request, a court must begin by calculating the so-called "lodestar amount" of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." *Robinson,* 160 F.3d at 1281 (citation omitted). The "lodestar" amount of fees is the "product of the number of attorney hours 'reasonably expended' and a 'reasonable hourly rate.'" *Id*. (citation omitted). "Once an applicant for a fee has carried the burden of showing that the claimed rate and number of hours are reasonable, the resulting product is

presumed to be a reasonable fee as contemplated by Section 1988." *Id*. (citing *Cooper v. Utah*, 894 F.2d 1169, 1171 (10th Cir. 1990)).

1) The number of attorney hours expended

Generally, when determining the reasonable hours expended on a case, a court should consider the total hours reported by each lawyer, scrutinize time exceeding the norm, evaluate the reasonableness of hours allocated to particular tasks, and identify and address any possible duplication of services. *See Ramos*, 713 F.2d at 553-554. Parties who seek attorney's fees must keep meticulous, contemporaneous time records. *See id*. at 553.

Plaintiff requests fees for 255 hours of work performed by two attorneys, Andrew Indahl and Anna Indahl, both attorneys with the Altura Law Firm. Doc. 105 at 3. Of the total number of attorney hours reported by Plaintiff, 144.2 hours was time spent preparing for trial or conducting the trial itself. For the entire litigation prior to this time, which constitutes the time between the filing of Plaintiff's complaint in February 2021 to the time of trial in April 2023, Plaintiff requests 74.6 hours. Plaintiff asserts that the number of attorney hours for which he seeks fees is reasonable, given that these hours include time for drafting and responding to pleadings, taking and defending several depositions, attending two settlement conferences, and responding to two motions in limine and a motion for qualified immunity. *Id*. at 4.

In his response to Plaintiff's motion, Defendant Hille does not claim that the number of hours expended by Plaintiff's attorneys are excessive or unreasonable, but instead argues that the declaration submitted by Plaintiff's counsel does not meet the requirements of the local rules of this federal district or the requirements of 28 U.S.C. § 1746 for unsworn declarations. Doc. 109 at 4. Defendant also claims that Plaintiff engaged in the "ambush tactic" of requesting attorney's fees for Anna Indahl, an attorney who never filed an entry of appearance in the matter. *Id*. Finally,

Defendant asserts that the Court should reject the time records submitted by Plaintiff in support of his fees because they are not "meticulous and contemporaneous," as required by Tenth Circuit law. *Id*. More specifically, Defendant points out that there are at least eight date stamp errors in Plaintiff's time records, which calls into question the contemporaneous nature of Plaintiff's time recoding practices. *Id.*

Upon considering the parties' submissions, the Court finds that the number of attorney hours for which Plaintiff seeks fees is reasonable given the nature of this case, the time it took to fully litigate the matter, and the fact that it resolved only after a five-day jury trial.[1] As to Defendant's complaint regarding the form of the declaration provided by Plaintiff's counsel, the Court notes the same counsel submitted a second declaration which includes the exact language required by 28 U.S.C. § 1746, resolving the issue raised by Defendant. Doc. 115-1. The Court also disagrees with Defendant that Plaintiff violated the local rules of this Court by allowing Anna Indahl to participate in this matter when she did not file an entry of appearance. The applicable local rule states that, "Entry of appearance by a law firm allows any member of that firm to participate in the action." D.N.M.-LR 83.4(B). Ms. Indahl is a partner at the Altura Law Firm, which entered its appearance in the matter when it originally filed Plaintiff's complaint in state court. Doc. 1-2 at 5. The Court finds that Ms. Indahl properly participated in this case. Finally, the Court disagrees with Defendant's assertion that Plaintiff's request for attorney's fees should

[1] The Court has reviewed the total hours reported by each attorney and compared Mr. Indahl's time records with those of Ms. Indahl's. Mr. Indahl is requesting payment for 190.9 hours of his time from June 01, 2020, through the jury verdict issued on April 14, 2023. Doc. 105 (Ex. 1-A, Andrew Indahl's Time Records). Ms. Indahl is requesting payment for 64.1 hours of her time preparing and participating in trial from April 09, 2023, through the jury verdict issued on April 14, 2023. Doc. 105 (Ex. 1-B, Anna Indahl's Time Records). The Court finds after evaluating each time entry, that the hours reported by each attorney correspond to specific tasks, are sufficiently descriptive and reasonable.

be denied because the time records initially submitted by Plaintiff contained eight date stamp errors. As adequately explained by Plaintiff, the time stamp errors were due to reformatting issues resulting from Plaintiff's counsel's attempts to format time entries into a Microsoft Excel spreadsheet for submission to this Court. Any errors resulting from that process were corrected and Plaintiff submitted an amended declaration with corrected time records. Doc. 115-1.

The Court finds no merit in Defendant's objections to the number of attorney hours expended by Plaintiff in this matter. The Court will therefore award fees for 190.9 hours for Andrew Indahl and 64.1 hours for Anna Indahl.

2) The claimed hourly rate

Plaintiff requests attorney fees based on an hourly rate of $350 for Andrew Indahl, the lead counsel in this case, and $325 for Anna Indahl, who served as second chair at the trial in this matter. Doc. 105 at 4-6. In addition to the objections to the form of Mr. Indahl's declaration and Mrs. Indahl's non-entry of appearance, which the Court has resolved, Defendant argues that Plaintiff has not sufficiently established that $350 and $325 an hour are normal attorney fees in this district. *Id*.

A claimant who files an application for attorney fees under § 1988(b) has the burden to prove that the fee is reasonable. *See Robinson*, 160 F.3d at 1280. The first step in establishing an hourly rate, is to determine "what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Ramos*, 713 F.2d at 552. Thus, Plaintiff bears the burden to produce evidence – in addition to his attorney's own affidavit – that the requested rates align with the local market rate for § 1983 civil rights litigation by comparable counsel. *See Blum*, 465 U.S. at 895 n.11. Evidence of the local market rate is typically established through the affidavits of local attorneys who practice in the same field as the attorneys seeking the

fees. *See Strobel v. Rusch*, No. CIV 18-0656 RB/JFR, 2021 WL 371575 at *2 (D.N.M. Feb. 3, 2021) (citation and quotation omitted).

In this case, to support the hourly rate requested for his lead counsel, Plaintiff provides an affidavit from Mr. Indahl himself, stating that his normal hourly rate is $350. Doc. 105 (Ex. 1, Andrew Indahl's Declaration). In his declaration, Mr. Indahl adds that he has been practicing law for 19 years and has 11 years of experience litigating Section 1983 claims. *Id.* at ¶13. Prior to law school, Mr. Indahl was a police officer in Georgia which he claims "uniquely qualif[ies] him for excessive force cases like this one." *Id*. at ¶12. Mr. Indahl asserts that he has general knowledge of hourly rates charged by law firms across the county and that his rates and the rates of his co-counsel "are in accord with comparable attorneys with comparable experience in this market." *Id*. at ¶ 22. Plaintiff also cites several cases to show that $350 an hour for Mr. Indahl is within the standard attorney fee range in this district for similar work by attorneys of comparable skill and experience. Doc. 105 at 4-6. For example, he submits that in *Casias v. Dep't of Corrections,* No. 1:16-CV-00056 JMC/SCY, 2019 WL 2881007 (D.N.M. July 3, 2019), United States Circuit Judge Joel M. Carson III, sitting by designation, awarded a $425/hour rate for an attorney who successfully litigated a § 1983 case. *Id.* at 5. He also points to the following cases:

- *Martin v. City of Albuquerque,* No. CIV 18-0031 RB/JFR, 2020 WL 1139054 (D.N.M. Mar. 9, 2020), a case in which United States District Judge Robert Brack awarded lead counsel in a civil rights case $400 an hour and a civil rights litigator from the ACLU $300 an hour.[2]

- *O Centra Espirita Beneficente Uniao Do Vegetal in U.S. v. Duke,* 343 F. Supp.3d 1050 (D.N.M. 2018), in which United States District Judge James O. Browning awarded a $350/hour rate to a lawyer with expertise in immigration law.

---

[2] Plaintiff's erroneously states that Leon Howard is a senior associate attorney. In fact, at the time the Martin case was litigated, Mr. Howard was the Legal Director for the ACLU of New Mexico.

- *Chavez v. Chavez*, No. 13-CV-1047 JAP/SCY, 2015 WL 13662584 (D.N.M. Apr. 20, 2015), a case where Senior United States District Judge James A. Parker awarded a $375/hour rate to an attorney with a "well-deserved reputation for excellence in civil rights cases."

To support the hourly rate of $300 an hour for Ms. Indahl, Plaintiff relies again on Mr. Indahl's affidavit, in which he states that Ms. Indahl has been a practicing attorney for over 20 years and for 16 of those years she worked at the Modrall Law Firm in Albuquerque, where she left as a partner and whose customary rate was $325 an hour. *Id*. at ¶¶ 19, 20.

The Court finds that the evidence and material submitted by Plaintiff are not sufficient to allow the Court to find that the hourly rates requested for Mr. Indahl and Ms. Indahl are reasonable. More specifically, Plaintiff has not yet met his burden of showing that the requested rates reflect what lawyers of comparable skill and experience in New Mexico practicing in the area of civil rights would charge for their time. As noted above, evidence of the local market rate is typically established through the affidavits of local attorneys who practice in the same field as the attorneys seeking the fees, but Plaintiff fails to submit any such affidavit(s). The Court notes that in each of the cases relied upon by Plaintiff, the requested rates were either not in dispute or the awarding court had before it sworn statements from lawyers other than the applicant themselves to evaluate and rely on in considering the reasonableness of the requested fees. *See Casias*, 2019 WL 2881007 at **2,5 (noting that the requested attorney hourly rates were not in dispute); *Martin*, 2020 WL 1139054 at *5 (relying on the declaration of an attorney not involved in the litigation who had "extensive experience in the field of civil-rights law" and who affirmed that the "requested hourly rates [were] reasonable" for the Albuquerque market); *O Centra Espirita*, 343 F. Supp.3d at 1084 (relying, in part, on the declaration of a local well-known civil rights attorney in the local community who determined that the applicant's requested hourly rate was fair, reasonable, and comparable to the prevailing market rate for lawyers of comparable skill and experience); *Chavez*,

2015 WL 13662584 at *6 (relying on the affidavits of two New Mexico attorneys who believed the hourly rates requested by the litigating attorneys were reasonable and customary compared to fees charged in New Mexico by attorneys with similar experience and skill in federal civil rights litigation).

Of course, evidence of the prevailing market rate may also be found in economic surveys conducted by state bar associations regarding local rates as well as the rates charged by losing counsel. *See Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1256 & n.1 (10th Cir 1998); *Sussman v. Patterson*, 108 F.3d 1206, 1212 (10th Cir. 1997). But Plaintiff does not provide such evidence, instead relying solely on his lead counsel's own affidavit and the cases noted above. The Court therefore finds that, although Plaintiff is entitled to attorney's fees under 42 U.S.C. § 1988(b), he has not met his burden of establishing the reasonableness of the hourly rates he requests for the attorneys who represented him in his matter. Because the law provides that attorney's fees should be awarded in such cases to a prevailing plaintiff, *see Hensley*, 461 U.S. at 429; *Robinson*, 160 F.3d at 1280, the Court will allow Plaintiff to resubmit his application for fees with additional supporting evidence which should include an affidavit or declaration from a local attorney with experience in civil rights litigation who can attest to the current reasonable hourly rate for attorneys with similar experience and skill in federal civil rights litigation.

**B. Plaintiff's Request for Costs.**

Finally, Plaintiff seeks reimbursement for certain costs and expenses incurred during the litigation. Defendant poses two objections to Plaintiff's requests. First, Defendant objects to the requested costs associated with the testimony provided by Rosa Gallegos-Samora, both at her deposition and trial. Doc. 109. Defendant also takes issue with the request for reimbursement of

a $1,077.50 payment made by Plaintiff to Defendant's counsel associated with the cancellation of Plaintiff's scheduled in-person deposition. *Id.*

1) The witness fees requested for Plaintiff's treating mental health therapist.

As to the expenses related to the testimony of Ms. Gallegos-Samora, Defendant objects to Plaintiff's request for reimbursement of $1,095, which includes $85 an hour for the time Ms. Gallegos-Samora spent providing testimony in this case. According to Defendant, Ms. Gallegos-Samora should only be compensated at the rate of $40 per day for her attendance at her deposition and trial, pursuant to 28 U.S.C. § 1821, because she testified only as a lay witness and was not tendered as an expert witness. In response, Plaintiff argues that Ms. Gallegos-Samora was not a lay fact witness but was instead Plaintiff's treating mental health counselor who provided her opinion on causation, diagnosis, and prognosis of Plaintiff's mental health issues. Relying primarily on a district court case from Iowa, Plaintiff asserts that treating physicians are more than mere lay witnesses and courts "routinely grant treating physician fees as falling within the definition of 'attorney fees' under 42 U.S.C. § 1988." Doc. 115 at 5 (citing *Baker v. John Morrell & Co.*, 263 F. Supp. 2d 1161, 1206 (N.D. Iowa 2003), *aff'd*, 382 F.3d 816 (8th Cir. 2004)).

Defendant is correct that the compensation of "fact witnesses" is governed by 28 U.S.C. § 1821, which states:

> A witness shall be paid an attendance fee of $40 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance.

28 U.S.C. § 1821(b). The compensation of expert witnesses, on the other hand, is governed by the Federal Rules of Civil Procedure. As accurately noted by Defendant, Ms. Gallegos-Samora was never tendered as an expert witness at trial; nor was she required to submit an expert report. But

this does not mean that Plaintiff may only seek reimbursement of the $40 per day attendance fee contemplated under § 1821 for lay witnesses. This is because the federal rules of civil procedure contemplate two types of expert witnesses: 1) those who are "retained or specially employed to provide expert testimony in the case" and thus must provide an expert report; and 2) those who otherwise provide testimony under rules "702, 703, or 705 of the Federal Rules of Evidence." Fed. R. Civ. P. 26(a)(2)(B) and (C).

The Court agrees with prior decisions from this district and other districts that treating medical providers fall into the second, broader category of "experts" who are not required to provide a written report. *See Rivera v. Smith's Food & Drug Centers*, No. CV 05-1049 RB/ACT, 2007 WL 9733646, at *5–6 (D.N.M. Aug. 14, 2007); *Wirtz v. Kan. Farm Bureau Servs., Inc.*, 355 F. Supp. 2d 1190, 1210-13 (D. Kan. Feb. 8, 2005). The Court further agrees that whether a treating provider should be compensated at the fact witness rate of $40 per hour or at a "reasonable" rate above that amount depends not on whether the witness is specifically designated as an expert, but on the substance of the treating provider's testimony. *See id*. at *6; *Johnson v. Kraft Foods N. Am.*, No. 05-2093-JWL-DJW, 2007 WL 734956, at *2 (D. Kan. Mar. 7, 2007); *Wirtz*, 355 F. Supp. 2d at 1210-13.

In this case, it can hardly be questioned that Ms. Gallegos-Samora provided testimony admissible under Rules 702 and 703, rather than purely factual testimony, with no objection from the Defendant. *See* Doc. 96 (Trial Tr. 4/11/23 at 282-325). Ms. Gallegos-Samora testified that she had been Plaintiff's mental health therapist for the past three years and was treating him for post-traumatic stress disorder. *See id*. at 282. She provided testimony regarding her diagnosis and treatment of Plaintiff, as well as his prognosis. She further described what she believed, in her professional opinion, to be the cause of Plaintiff's mental and emotional health issues. *See id*. at

288-291. The Court finds that because Ms. Gallegos-Samora did not testify as a lay witness, but instead provided unopposed expert testimony admissible under Rules 702 and 703, she is "entitled to a reasonable fee." *Wirtz*, 355 F. Supp. 2d at 1210 n. 81, 1212 (collecting cases that reached the same conclusion).

Other than asserting that Ms. Gallegos-Samora should only be compensated at a rate of $40 per day, Defendant does not argue that requested hourly rate for Ms. Gallegos-Samora is an unreasonable fee for a mental health therapist with similar experience or skill. The Court thus finds that Ms. Gallegos-Samora's hourly rate of $85 an hour for the time she spent testifying at both her deposition and trial, is reasonable. *See Wirtz*, 355 F. Supp. 2d at 1210 n. 81 (finding, in 2005, that a $120 per hour fee charged by a social worker who treated the plaintiff for depression was reasonable for time spent on "travel, court testimony and review of the records"). The requested fees for Ms. Gallegos-Samora are thus allowable expenses.

2) Reimbursement for cost of cancelled deposition.

Defendant also objects to Plaintiff's request to be reimbursed in the amount of $1,077.50, which constitutes payment made by Plaintiff to Defendant's counsel for unrefundable travel expenses. As explained by the parties, shortly before the scheduled deposition of Plaintiff Castillo, Plaintiff's counsel informed Defendant's counsel that he had inadvertently failed to notice that the deposition was set to be in person in Albuquerque, and that Plaintiff Castillo would be unable to attend the deposition in person on such notice. Doc. 115 at 6. Defendant's counsel agreed to go forward with the deposition by Zoom instead of in-person but requested reimbursement for the unrefundable travel expenses incurred as a result of the cancellation. Plaintiff now lists the payment made to Defendant's counsel as a recoverable expense or cost in this litigation, claiming that he is entitled to reimbursement for the payment because it was "reasonably necessary to the

litigation." *Id*. The Court disagrees. The payment to Defendant's counsel was necessary only because Plaintiff's counsel made a mistake regarding where the deposition of Plaintiff was to take place. Although the Court does not find this to have been "sanctionable conduct," as argued by Defendant, it finds no basis to approve the requested reimbursement for the payment. Other than merely asserting that the payment was necessary to the litigation, Plaintiff provides no legal support for the proposition that such payments are recoverable costs or expenses in a suit brought under 42 U.S.C. § 1983.

In summary, the Court will award costs and expenses as follows:

| | |
|---|---|
| Filing Fee | $148.38 |
| Jury Fee | $150.00 |
| Service of Process | $195.00 |
| Hille Deposition Transcript | $361.17 |
| Rosa Gallegos Deposition Transcript | $462.36 |
| Invoice of Rosa Gallegos-Samora for deposition | $255.00 |
| Invoice of Rosa Gallegos-Samora for trial testimony | $840.00 |
| Total expenses/costs | $2,411.91 |

## IV. CONCLUSION

For the reasons stated herein, the Court finds that Plaintiff Castillo is entitled to attorney's fees and costs pursuant to pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1920, but will reserve ruling on the reasonableness of the hourly rates requested for Plaintiff's attorney. Plaintiff shall have 21 (twenty-one) days from the date of this Memorandum Opinion and Order to submit additional evidence concerning the reasonableness of the attorney's fees requested. The Court will further grant Plaintiff's request for expenses and costs in the amount of $ 2,411.91.

**IT IS THEREFORE ORDERED** that Plaintiff Joe Castillo's Motion for Attorneys' Fees and Litigation Expenses (Doc. 105) is **GRANTED** in part and **DENIED** in part.

HON. DAVID HERRERA URIAS
UNITED STATES DISTRICT COURT